COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Haley

UNPUBLISHED

VICTORIA HERRERA

v.      Record No. 0617-19-3

CITY OF ROANOKE DEPARTMENT
  OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
OCTOBER 1, 2019

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
William D. Broadhurst, Judge

(Christian A. Persinger; Steidle Law Firm, on brief), for appellant.
Appellant submitting on brief.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Sarah Jane Newton, Guardian *ad litem* for the minor
children, on brief), for appellee. Appellee and Guardian *ad litem*
submitting on brief.

Victoria Herrera (mother) appeals an order terminating her parental rights and approving the

foster care goal of adoption for two of her children. Mother argues that the circuit court erred by:

(1) finding that the evidence was sufficient to terminate her parental rights and approve the goal of

adoption and (2) denying her motion for a continuance. Upon reviewing the record and briefs of

the parties, we conclude that the circuit court did not err. Accordingly, we affirm the decision of

the circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Mother has two sons who are the subject of this appeal.[2] On July 25, 2017, the City of Roanoke Department of Social Services (the Department) received a complaint that the children, who were autistic, had "full diapers" that had not been changed all day and that their house was dirty. The children were two and three years old at the time. The Department investigated and entered into a safety plan with mother, who agreed to change the children's diapers regularly, supervise the children at all times, clean the floors and kitchen, and remove all safety hazards from the home. After several rescheduled visits, the Department returned almost two weeks later and found that mother had made "very little progress."

The Department returned to the home a few weeks later and found that the floors were "sticky" and that there were flies "everywhere." The Department noticed that there were boxes, clothes, and trash piled four feet high along the walls between the kitchen and family room, so there was "only a small path to walk." The Department returned a couple of days later and discovered rotten food in the refrigerator.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother has another child who is not the subject of this appeal. The father of her sons had been deported twice to El Salvador and was not involved in the circuit court hearing.

The Department entered into another safety plan with mother. Mother agreed that the children would stay with her mother and a family friend until September 5, 2017, so that she could focus on cleaning the house. When the Department went to the house on September 5, 2017, mother and several of her friends were cleaning the house, but it was not ready yet for the children's return. Mother and the Department agreed that she could have an additional day to clean the house. Mother also agreed to submit to a hair follicle test, but she informed the Department that she would test positive for cocaine.[3]

By September 6, 2017, the condition of the house was "a lot better" because mother had cleaned the floors and refrigerator, as well as removed the safety hazards in the home. The Department agreed to return the children, but mother had to continue decluttering and maintain the cleanliness of the home. The Department made a referral for homemaker services to help her with organization and cleaning.

In addition, as a result of mother's cocaine admission and the positive hair follicle test, the Department referred her for a substance abuse assessment. Despite the Department giving her multiple opportunities and extensions, mother never attended the substance abuse assessment. Consequently, the Department sought a child protective order, which the City of Roanoke Juvenile and Domestic Relations District Court (the JDR court) issued on September 22, 2017. The JDR court ordered mother to complete a substance abuse assessment and follow all recommendations, keep appointments with service providers, maintain the cleanliness of the home, provide a list of her medications to the Department, ensure that the children attended a daily development program, and attend a family partnership meeting with the Department.

Mother attended the family partnership meeting and allowed the Department access to her prescription records. She also completed the substance abuse assessment and the orientation

---

[3] The results of the hair follicle test were positive for cocaine.

for the recommended program. However, mother missed so many appointments after the orientation that she was dropped from the program. Mother also did not keep her appointments with the program providing homemaker services. She failed to ensure that the children attended their daily development program; they missed at least eleven days in six weeks and were tardy numerous times. Due to mother's lack of compliance with the required services, the Department filed for an emergency removal order, which the JDR court granted on November 9, 2017.

On December 14, 2017, the JDR court adjudicated that the children were abused or neglected. On January 4, 2018, the JDR court entered the dispositional orders. Mother did not appeal the dispositional orders.

Once the children entered foster care, the Department informed mother that she had to maintain stable and clean housing, maintain verifiable income, cooperate with the Department and its recommendations, submit to random drug screens, complete a substance abuse assessment and follow all recommendations, participate in a psychiatric evaluation and follow all recommendations, participate in a psychological and parental capacity assessment, attend individual counseling, obtain appropriate child care, and attend all visitations.

Mother never provided verification of her income. She was evicted from her home on August 16, 2018, and did not provide the Department with a new address. The Department referred her to several places for individual counseling and a psychiatric assessment. Mother did not participate in counseling or complete the psychiatric assessment. The Department referred mother to parenting classes. She attended the first class but missed the next three classes, so she was removed from the program. The Department referred her to another parenting class, but she missed the first three classes and was removed again. Mother never completed the parenting classes. The Department referred mother to drug screens on July 3 and 12, 2018, but she did not attend either appointment. The Department referred mother to a substance abuse assessment and

emphasized the importance of attending substance abuse treatment. Mother did not follow through with the assessment.

For approximately nine months, the Department arranged weekly visitation between mother and the children. Mother missed fourteen visits and was late for eleven visits. She did not appear for her last scheduled visitation on August 21, 2018.

On October 9, 2018, the JDR court entered orders terminating mother's parental rights to her two children and approving the foster care goal of adoption. Mother appealed to the circuit court.

On March 12, 2019, the parties appeared before the circuit court, and mother moved for a continuance. She informed the circuit court that she had been out of town for a family emergency and was unable to gather some documents, specifically copies of her lease, employment records, and some counseling records, that she wished to present to the court. The Department objected to the continuance and argued that mother had had several months to obtain her documents. The Department noted that the JDR court terminated her parental rights on October 9, 2018, and the circuit court originally scheduled the hearing for the appeal on January 3, 2019. However, "due to scheduling issues," the case was continued to March 12, 2019. After hearing the parties' arguments, the circuit court denied mother's motion for a continuance and held that mother had had "ample time" to gather her documents. The circuit court told mother that she could testify "as to whatever she like[d]," but the court was "not going to continue the case at this late hour given the opportunity she had to prepare and failed to do so."

The parties proceeded to present their evidence. The Department informed the circuit court that despite its efforts, it had not had any contact with mother after the JDR court terminated her parental rights. The Department explained that it did not have a valid address for mother and that she never provided a current address. Mother's phone did not always work, so

the Department was limited to emailing mother at an email address that she provided. Mother still had not completed substance abuse treatment, counseling, or parenting classes.

When the children entered foster care, both were diagnosed with autism, and the oldest child was diagnosed with cerebral palsy also. Neither child was verbal. Since being in foster care, both children were verbal. The older child had "blossomed" in foster care. He had received physical and occupational therapy. He attended the Head Start program and was being tested for the gifted program. The younger child also "flourished" in foster care. He had received speech and occupational therapy and attended daycare. The Department explained that the foster families were "willing to make long term commitments to these children."

Mother testified that she loved her children and did not want her parental rights terminated. At the time of the circuit court hearing, she was working two jobs and lived in a two-bedroom apartment with a roommate.[4] She explained that after her mother died on September 16, 2017, she lost her support system and had a difficult time dealing with the loss.[5] Mother admitted to missing two drug screens and never completing substance abuse treatment. She testified that she last used illegal drugs approximately three weeks earlier and stated that she had used drugs to cope with pressure and depression.

Mother admitted that she needed counseling. She had not started individual counseling, but testified that she had found a counselor. She explained that she would have started counseling before the circuit court hearing, but she had been out of town due to a death in her family. Mother further admitted that she had not completed the parenting classes. She

---

[4] The lease was in the roommate's name, not mother's name.

[5] The Department referred mother to a grief support group, but it was unaware if she participated with the group.

acknowledged that she was late or missed her visitations "a lot of times." She attributed her tardiness or absences mostly to transportation issues.

After hearing all of the evidence and the parties' arguments, the circuit court found that it was in the best interests of the children to terminate mother's parental rights under Code § 16.1-283(B) and (C)(2). It also approved the foster care goal of adoption. This appeal followed.

ANALYSIS

*Termination of parental rights*

Mother argues that the circuit court erred in finding that the evidence was sufficient to terminate her parental rights and approve the foster care goal of adoption.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)). "Considerably more 'retrospective in nature,' subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services." Toms, 46 Va. App. at 271 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63 (2003)).

The Department had referred mother to substance abuse treatment, parenting classes, counseling services, psychiatric services, homemaker services, and a grief support group. Mother admittedly did not complete any of the required services. Despite the Department's emphasis on mother's need for substance abuse treatment, she never completed treatment and testified that she had used illegal drugs as recently as three weeks before the circuit court hearing. The Department also arranged for weekly visitation with the children, but mother frequently missed or was late to the visitations. The Department "is not required to force its services upon an unwilling or disinterested parent." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 323 (2013) (quoting Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243 (1982)); see also Logan, 13 Va. App. at 130.

The circuit court found that mother had not remedied the problems that led to the children's placement in foster care. The circuit court further found that the Department offered programs and services to mother to help her, but she did not "follow up." Furthermore, the circuit court found that mother had not demonstrated that she had "the skills necessary to care for the children" and that she was "not in a position to be a mother to children, certainly not these two."

Both children had special needs, and after being in foster care for approximately sixteen months, the children's needs were being met and they were "thriving." When they entered foster care, neither child was verbal. While in foster care, the children had received necessary therapy and attended school. At the time of the circuit court hearing, both were verbal. The evidence proved that the children were doing well. The circuit court told mother that the children could not "simply sit and wait for [her] to get [her] stuff together. They're growing. They have needs and they need stability." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Based on the totality of the circumstances, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).[6] "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the circuit court erred in terminating mother's parental rights pursuant to Code § 16.1-283(B).

---

[6] With respect to mother's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3.

*Motion for continuance*

Mother argues that the circuit court erred by denying her motion for a continuance. She asserts that she needed additional time to gather necessary documents to present as evidence. She contends that the circuit court's denial of her motion prevented her "from being able to adequately defend the case against her."

"The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." Haugen v. Shenandoah Valley Dep't of Soc. Services, 274 Va. 27, 34 (2007). "The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant." Id.

As the circuit court found, mother had "ample time" to gather her documents in preparation for trial. Mother noted her appeal of the JDR court ruling in October 2018; the circuit court hearing was in March 2019. Furthermore, the hearing already had been continued from an earlier date in January 2019, giving mother an additional two months to prepare and assemble her evidence.

Mother was present at the circuit court hearing and had an opportunity to testify about her current circumstances. She testified about her housing and employment situation. She also stated her intention to seek counseling. Mother has not shown that the circuit court would have reached a different conclusion if it had the documents that merely would have corroborated her testimony. Thus, she failed to demonstrate any prejudice. Contrary to mother's arguments, the circuit court did not abuse its discretion in denying her motion for a continuance.

CONCLUSION

For all of the foregoing reasons, the circuit court's ruling is affirmed.

<u>Affirmed.</u>